THE STATE OF OHIO, APPELLANT, *v.* JACKSON, APPELLEE.

[Cite as *State v. Jackson,* 134 Ohio St.3d 184, 2012-Ohio-5561.]

*Sufficiency of indictment—For the purpose of identifying the drug involved in a drug-trafficking offense under R.C. 2925.03(A), an indictment is sufficient if it names the schedule in which the drug appears—R.C. 2925.03(C).*

(No. 2011-1925—Submitted September 11, 2012—Decided December 4, 2012.)

APPEAL from the Court of Appeals for Lorain County,

No. 10CA009791, 2011-Ohio-4998.

_____

SYLLABUS OF THE COURT

For the purpose of identifying the drug involved in a drug-trafficking offense under R.C. 2925.03(A), an indictment is sufficient if it names the schedule in which the drug appears.

_____

LUNDBERG STRATTON, J.

I. Introduction

{¶ 1} The question before the court is whether an indictment charging a defendant with trafficking in drugs under R.C. 2925.03 must name the specific drug involved in the offense or whether identifying the schedule in which a drug appears is sufficient. We hold that the indictment is sufficient if it names the schedule in which the drug appears. Therefore, we reverse the judgment of the court of appeals.

II. Procedural History

{¶ 2} On December 10, 2008, a Lorain County grand jury issued an indictment charging appellee, Alfred Jackson, with five criminal counts, including two counts of trafficking in drugs—Count One under R.C. 2925.03(A)(1) and

Count Two under R.C. 2925.03(A)(2)—both third-degree felonies.  Both counts contained the following language:

> The drug involved in the violation is a compound, mixture, preparation, or substance included in Schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish and the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount.

{¶ 3}   The state's January 20, 2009 bill of particulars and its discovery response alleged that Jackson had been trafficking in ecstasy pills.  Subsequently, the state filed a notice of intent to submit a lab report as evidence at trial.  The report, which is attached to the notice, indicates that the specimens submitted were "three (3) baggies of green vegetable matter" and that the test results indicated that the substance was "Cannabidiol, Delta-9-Tetrahydrocannabinol [Marihuana] (a schedule I controlled substance), and Cannabigerol."  The marihuana was the basis for Count Three of the indictment and is not relevant to our analysis pertaining to Counts One and Two.

{¶ 4}   However, by July 15, 2009, Jackson was aware that the state was alleging that the drug involved in Counts One and Two was benzylpiperazine ("BZP"), which the state alleged was a Schedule I controlled substance.  On that date, Jackson filed a Crim.R. 12 motion to dismiss the two trafficking counts, alleging that BZP is not listed as a Schedule I controlled substance in R.C. 3719.41 and therefore neither count charged him with trafficking in drugs.

{¶ 5}   The state filed a motion in opposition, arguing that Crim.R. 12 tests only the sufficiency of the charging instrument, without regard to the evidence that may be produced at trial.  Therefore, the state argued, because the indictment tracked the language of R.C. 2925.03 and Jackson's argument speaks

only to the sufficiency of the state's evidence that may be produced at trial, his motion to dismiss should be denied. The trial court denied Jackson's motion to dismiss.

{¶ 6} Subsequently, the state filed a motion requesting the trial court to take judicial notice that "benzylpiperazine, also known as BZP, is a Schedule I drug under" R.C. 3719.41 (Schedule I)(E)(2). Jackson filed another motion to dismiss, alleging that the indictment did not sufficiently charge the two trafficking counts because neither count named the specific controlled substance involved. The court granted the state's motion and took judicial notice that BZP is a Schedule I drug, and it denied Jackson's motion to dismiss.

{¶ 7} Jackson then pleaded no contest to all the charges, including Counts One and Two. The trial court accepted Jackson's plea and sentenced him to one year in prison for each of Counts One, Two, Three, and Five and to ten months in prison for Count Four, with all five sentences to run concurrently.

{¶ 8} Jackson appealed, arguing that the trial court erred in not dismissing the first two counts of the indictment. In a two-to-one decision, the court of appeals, relying on *State v. Headley*, 6 Ohio St.3d 475, 453 N.E.2d 716 (1983), reversed the finding of guilt on the first two counts, holding that the indictment was insufficient because it stated that the drug involved was a "Schedule I or II [drug]," instead of naming the specific drug involved. *State v. Jackson*, 9th Dist. No. 10CA009791, 2011-Ohio-4998, at ¶ 12, 14.

{¶ 9} The appeal is now before this court pursuant to our accepting the state's discretionary appeal.

{¶ 10} The state argues that the court of appeals erred in interpreting *Headley* as requiring an indictment for drug trafficking to name the particular controlled substance involved, as opposed to merely naming the category of the controlled substance involved, which in this case was a Schedule I or II drug. Jackson argues that if an indictment does not name the specific controlled

3

substance, the defendant will not know exactly what he or she is charged with and will not be able to defend himself or herself against multiple trials for multiple controlled substances.

### III. Analysis

**{¶ 11}** R.C. 2925.03 sets forth the criminal offense of trafficking in drugs. It prohibits persons from selling or offering to sell controlled substances. R.C. 2925.03(A). The version of R.C. 2925.03(C) in effect at the time that Jackson committed his trafficking offense set forth the degree of the offense and the penalty, depending on which subsection of (C) the drug involved falls under: (C)(1) Schedule I or II drugs, (2) Schedule III, IV, or V drugs, (3) marihuana, (4) cocaine, (5) L.S.D., (6) heroin, and (7) hashish. The schedules referred to in R.C. 2925.03(C)(1) and (2) are lists of controlled substances. *See* R.C. 3719.41. There are five schedules of drugs.

**{¶ 12}** "Article I, Section 10 of the Ohio Constitution provides that 'no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury.' Thus, the Ohio Constitution guarantees an accused that the essential facts constituting the offense for which he is tried will be found in the indictment by the grand jury." *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, 926 N.E.2d 611, ¶ 14, citing *Harris v. State*, 125 Ohio St. 257, 264, 181 N.E. 104 (1932). Crim.R. 7(B) provides, "The statement [specifying the offense in an indictment] may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged."

**{¶ 13}** "An indictment meets constitutional requirements if it 'first, contains the elements of the offense charged and fairly informs a defendant of the

4

charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' " *State v. Childs,* 88 Ohio St.3d 558, 565, 728 N.E.2d 379 (2000), quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

{¶ 14} "Generally, the requirements of an indictment may be met by reciting the language of the criminal statute." *State v. Childs*, 88 Ohio St.3d 194, 199, 724 N.E.2d 781 (2000), citing *State v. Murphy*, 65 Ohio St.3d 554, 583, 605 N.E.2d 884 (1992). However, an indictment that otherwise tracks the statutory language is not defective for failing to identify the elements of a predicate offense. *See Murphy* at 583 (failing to name elements of the predicate offenses of aggravated robbery and aggravated burglary did not render the indictment for aggravated murder insufficient). *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 31 (failing to name elements of the predicate offense did not render the indictment for aggravated burglary insufficient). Our holdings in *Murphy* and *Foust* are based on the notion that "it is the predicate offense itself and not the elements of the predicate offense that is an essential element of the charged offense." *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 12. But if the indictment does not name the essential elements of the criminal offense charged, the indictment is insufficient to charge the defendant with that offense. *See State v. Jester*, 32 Ohio St.3d 147, 149, 512 N.E.2d 962 (1987).

{¶ 15} A defendant may seek "specificity of detail" relating to criminal charges through a request for a bill of particulars. *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). For example, the specific drug involved in a trafficking offense may be addressed in a request for a bill of particulars. *See State v. Williamson*, 3d Dist. No. 9-10-11, 2010-Ohio-5060, ¶ 2, 3 (the indictment charged defendant with trafficking in a Schedule I or II drug, and the bill of particulars clarified that the drug involved was ecstasy).

**{¶ 16}** In the instant case, the language of the indictment tracked the language of the trafficking-in-drugs statute, R.C. 2925.03(C)(1), by alleging, "The drug involved in the violation is a compound, mixture, preparation, or substance included in Schedule I or II with the exception of marihuana, cocaine, L.S.D., heroin, and hashish * * *." Nevertheless, the court of appeals, relying on *State v. Headley*, 6 Ohio St.3d 475, 453 N.E.2d 716, held that the indictment needed to name the specific type of controlled substance involved. *Jackson*, 2011-Ohio-4998.

**{¶ 17}** In *Headley,* the state alleged that Headley had committed aggravated trafficking in drugs. The indictment alleged that Headley " 'did knowingly provide money or other items of value to another person with the purpose that the recipient of the money or items of value would use them to obtain *controlled substances* for the purpose of selling or offering such *controlled substances* in amounts exceeding a bulk amount * * *.' " (Emphases added.) *Id*. at 475, quoting the indictment. Over Headley's objection, the trial court permitted the state to amend the indictment by adding the words, "to-wit: cocaine." *Id*. A jury found Headley guilty as charged. *Id*. at 476.

**{¶ 18}** The court of appeals reversed Headley's convictions, in part due to the fact that the indictment failed to name the controlled substance involved. *Id*. The state appealed to this court, arguing that the indictment was sufficient to charge Headley with trafficking in drugs.

**{¶ 19}** In *Headley,* we recognized:

The severity of the offense [of trafficking in drugs] is dependent upon the type of drug involved. Under R.C. 2925.03(C) [now R.C. 2925.03(C)(1)], the offense is aggravated trafficking if the substance involved is a Schedule I drug * * * or a Schedule II drug. Under R.C. 2925.03(D) [now R.C. 2925.03(C)(2)], if the

substance involved is a Schedule III, IV or V drug, the offense is the lesser one of trafficking in drugs.

*Headley*, 6 Ohio St.3d at 479, 453 N.E.2d 716. Thus, we concluded that "R.C. 2925.03 sets forth more than one criminal offense with the identity of each being determined by the type of controlled substance involved." *Id*. Consequently, we held that "[t]he *type* of controlled substance involved in the crime of aggravated trafficking under R.C. 2925.03 is an essential element which must be included in the indictment, the omission of which cannot be cured by amendment under Crim.R. 7(D)." (Emphasis added.) *Headley* at paragraph two of the syllabus. We upheld the court of appeals' reversal of Headley's conviction because "the indictment purported to charge [Headley] with the offense of aggravated trafficking but neglected to state the controlled substance involved." *Id*. at 479.

{¶ 20} The question in the present case is whether *Headley*'s requirement that the "type" of drug involved in the offense be included in the indictment means that the indictment must name the specific drug involved, even if the drug involved in the offense appears on one of the five schedules found in R.C. 3719.41. It is evident that this court never intended *Headley* to require such specificity, because after stating that the severity of the offense depended on the type of drug involved in the offense, the court proceeded to give two examples in which it recognized that the *schedule* of the drug involved was sufficient to put the defendant on notice of the severity of the offense, i.e., trafficking or aggravated trafficking. *Headley* at 479.[1]

{¶ 21} R.C. 2925.03 has been amended numerous times since *Headley* was decided. However, the current version of R.C. 2925.03 still provides that

---

1. At the time *Headley* was decided, the controlled substances were found in R.C. 2925.03(C) (Schedule I or II drug), 2925.03(D) (Schedule III, IV, or V drug), and 2925.03(E) (marihuana). Am.Sub.H.B. No. 300, 136 Ohio Laws, Part II, 2311, 2318-2323. Today the controlled substances are listed in R.C. 2925.03(C)(1) through (8). R.C. 2925.03.

trafficking in a Schedule I or II drug is aggravated trafficking, R.C. 2925.03(C)(1), and trafficking in a Schedule III, IV, or V drug is trafficking, R.C. 2925.03(C)(2). Thus, "the *Schedule* * * * classification of a controlled substance determines the severity of the offense as much as the specific name of the substance." (Emphasis added.) *State v. Smoot*, 2d Dist. No. 96-CA-107, 1997 WL 432225, *5. It is evident that under R.C. 2925.03(C)(1) and (2), the General Assembly intended the schedule of drugs set forth in R.C. 3719.41, not the specific drug itself, to be an essential element of trafficking. *See generally Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 12. Therefore, we hold that for the purpose of identifying the drug involved in a drug-trafficking offense under R.C. 2925.03(A), an indictment is sufficient if it names the schedule in which the drug appears.

{¶ 22} The specific drug or drugs alleged to be involved in a drug-trafficking offense may be discovered by a defendant through a request for a bill of particulars. *See Williamson*, 2010-Ohio-5060, ¶ 2, 3 (the indictment charged defendant with trafficking in a Schedule I or II drug, and the bill of particulars clarified that the drug involved was ecstasy).

IV. Conclusion

{¶ 23} The indictment in this case charged Jackson with two counts of trafficking in Schedule I or II drugs and asserted that the amount of the drug involved equaled or exceeded the bulk amount but was less than five times the bulk amount, which results in a charge of aggravated trafficking, a felony of the third degree pursuant to R.C. 2925.03(C)(1)(c). Thus, the indictment adequately informed Jackson of the charges pending against him in Counts One and Two of the indictment.

{¶ 24} With regard to the particular drug involved, the state's bill of particulars identified the controlled substance involved as ecstasy. Nevertheless, it is evident that by July 15, 2009, Jackson was aware that the state was charging

him with trafficking in BZP, because on that date, he filed a Crim.R. 12 motion to dismiss the trafficking charges, claiming that BZP was not listed as a Schedule I controlled substance. Ultimately, the trial court concluded that BZP was a Schedule I controlled substance under Ohio law, and that issue was not challenged on appeal. Consequently, Jackson knew that the state was alleging that he had been trafficking in BZP when he pleaded no contest. Therefore, Jackson can adequately protect himself against further prosecution for the same offense.

{¶ 25} Accordingly, we reverse the judgment of the court of appeals and reinstate Jackson's conviction for trafficking in Counts One and Two of the indictment.

Judgment reversed

and convictions reinstated.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents and would affirm the judgment of the court of appeals.

_____

Dennis P. Will, Lorain County Prosecuting Attorney, and Peter J. Gauthier, Assistant Prosecuting Attorney, for appellant.

Michael Stepanik and Jack Bradley, for appellee.

_____